# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIME GROUP INTERNATIONAL, INC., an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> SOYUZ-VICTAN USA, LLC, a New Jersey corporation; and SOYUZ-VICTAN, LTD., a Ukrainian corporation, <br><br> Defendants. | No. 07 C 4178 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dime Group International, Inc. ("DGI"), filed a three-count Complaint against Defendants, Soyuz-Victan USA, LLC ("SV-USA") and Soyuz-Victan Ltd. ("SV"). Count I alleges breach of contract against SV, Count II alleges tortious interference with prospective economic advantage against both SV and SV-USA, and Count III prays for a declaratory judgment with respect to DGI's rights to distribute certain products. Presently pending before this Court is Defendants' Motion to Dismiss or to Stay the Action in Its Entirety in Favor of Arbitration or to Dismiss Counts II and III of Plaintiff's Complaint.

## BACKGROUND

A reading of Plaintiff's Complaint and supporting declarations filed with the parties' briefs support the following summary of the alleged conduct of the parties.

DGI is an Illinois corporation and importer of liquors for distribution within the United States. SV is a Ukrainian corporation, which specializes in the distillation of liquors, including several kinds of vodka. SV-USA is a New Jersey corporation created by SV for the purpose of importing, marketing and distributing "SV Supreme vodka."

On or about December 2004, DGI and SV entered into a written agreement, whereby SV granted DGI the exclusive right to import and distribute several kinds of vodka produced by SV. Pursuant to the agreement, DGI was granted the exclusive rights to import and distribute vodka under the trademarks "Soyuz-Victan," "Soyuz-Victan Premium," "Soyuz-Victan Pshenichnaya," "Soyuz-Victan na Berezovyh Pochkah," and bitter liqueur under the trademark "Soyuz-Victan Medovaya s Percem." SV transferred ownership to DGI in exchange for DGI's acceptance of and payment for the products. DGI was to then sell the products to DGI's "network of wholesale and retail purchasers."

DGI alleges that SV breached the above agreement by failing to provide products in conformity with the terms of the agreement and by depriving DGI of the exclusive rights to import and distribute the products under the trademarks listed above. As a result, DGI has suffered the loss of substantial profits.

DGI alleges that on or about September 19, 2006, SV and SV-USA intentionally interfered with the business relationships between DGI and its network of wholesale and retail purchasers and prospective economic opportunities associated with those relationships. SV removed the SV trade dress from all SV products sold to DGI, marketed and sold SV Supreme vodka with SV trademark and trade dress to other distributors, and denied DGI the right to distribute SV Supreme vodka. As a result of Defendants' conduct, DGI was unable to continue the sale of SV products to its regular

wholesale and retail purchasers and, therefore, sustained substantial damages. DGI alleges that it operated at a loss in 2006 with a total business income of -$13,808. DGI will also continue to incur damages as a result of purchasing requirements contained within the distribution agreement.

Under the written agreement, "[t]he parties have agreed to resolve all disputes related to this Contract by mutual negotiations." As later amended, the agreement states further that "any dispute, controversy or claim which relates to this agreement will be submitted to arbitration of International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation, in Moscow." Further, the arbitration will be binding, conducted in Russian, and the laws of Ukraine will apply.

## ANALYSIS

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004)(*Sprint*). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in *Bell Atlantic*). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.* 496 F.3d 773, 767 (7th Cir. 2007), quoting *Bell Atlantic*, 127 S. Ct. At 1965, 1973 n. 14.

3

*Staying the Action in Favor of Arbitration*

Defendants seek to dismiss or stay Plaintiff's action in its entirety in favor of arbitration. Arbitration is a matter of contract; therefore, parties to an agreement are only obligated to submit to arbitration those disputes to which the agreement applies. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (*AT&T*). The Court must determine whether the agreement "creates a duty" to arbitrate the dispute in question. *AT&T*, 475 U.S. at 649. There is a presumption of arbitrability, especially with respect to broad arbitration clauses. *AT&T*, 475 U.S. at 650 ("presumption is particularly applicable where the clause is as broad as the one ... which provides ... 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder....'"). Under the Federal Arbitration Act ("FAA"), upon satisfaction by the court that a valid arbitration agreement exists between the parties, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2008). The FAA is a codification of the "national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

A valid arbitration provision does exist in the written agreement between DGI and SV; neither party disputes the provision's validity. The provision requires the submission of "any dispute, controversy or claim which relates to this agreement" to arbitration. DGI, however, asserts several arguments against the enforceability of the provision.

## Forum-Selection Clause

DGI argues that the forum-selection clause within the arbitration provision is "substantively unconscionable" because of the likely costs of arbitration. DGI argues further that arbitrating in the Russian forum will be so "gravely difficult and inconvenient" that it will deprive DGI of its day in court.

"An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). While agreements between two American parties that contain a remote forum-selection clause may suggest serious inconvenience to one or both parties and the possibility of adhesion, that is not so with respect to the parties in this action. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972) (*The Bremen*). In the case of freely negotiated international commercial transactions, where the inconvenience of proceeding in a foreign forum was likely foreseeable at the time of contracting, the presumption is with enforceability of the forum-selection clause. *The Bremen*, 407 U.S. at 18. In such a case, the party seeking to avoid enforcement of the forum-selection clause bears the burden of showing that the proceeding in the contractual forum "will be so gravely difficult and inconvenient" that it will be deprived of its day in court. *The Bremen*, 407 U.S. at 18. Without such a showing, "there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *The Bremen*, 407 U.S. at 18. Furthermore, unless affected by fraud, undue influence, or overweening bargaining power, enforcement of a freely negotiated private international agreement is favored. *The Bremen*, 407 U.S. at 12.

The record indicates that the arbitration provision was created in furtherance of an international commercial relationship through negotiations between sophisticated parties with a relative balance of bargaining power. The subsequent amendments to the agreement and the arbitration provision also indicate that the consequences of enforcement of the provision were foreseeable and considered by both DGI and SV. Furthermore, DGI has not alleged any acts of fraud, undue influence, or overweening bargaining power on SV's part. Therefore, the arbitration provision's forum-selection clause is enforceable.

<u>Choice-of-Law Provision</u>

DGI also argues that the application of Ukrainian law pursuant to the arbitration agreement's choice-of-law provision is invalid because Ukrainian law does not recognize a claim for tortious interference with contract and, therefore, is contrary to fundamental Illinois public policy. DGI's Complaint, however, contains only a claim for tortious interference with prospective economic advantage. *See* Count II of Complaint.

The two claims are distinct. Under Illinois law, tortious interference with prospective economic advantage occurs when (1) the plaintiff has a reasonable expectancy of a valid business relationship with a third party; (2) the defendant has knowledge of the prospective business relationship; (3) the defendant intentionally interferes with the prospective business relationship such that the business relationship never materializes; and (4) the interference damages the plaintiff. *Interim Health Care of Northern Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 886 (7th Cir. 2000). On the other hand, tortious interference with contract occurs when (1) a valid and enforceable contract between the plaintiff and a third party exists; (2) the defendant is aware of the contractual

relationship; (3) the defendant intentionally and unjustifiedly induces a breach of the contract; (4) the third party subsequently breaches as a result of the defendant's wrongful conduct; and (5) damages result from the breach. *Wheel Masters, Inc. v. Jiffy Metal Products, Co.*, 955 F.2d 1126, 1129 (7th Cir. 1992).

It is true that a "contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought . . . ." *The Bremen*, 407 U.S. at 15. However, an international transaction being "subject to laws and remedies different or less favorable than those of the United States" does not alone make a forum-selection, arbitration, or choice-of law-clause unenforceable. *Bonny v. The Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993).

DGI has not shown that remedies are unavailable to it under Ukrainian law nor that the remedies available under Ukrainian law would contravene a strong public policy of Illinois. Therefore, the absence of the specific remedies sought by DGI is not enough to deny enforceability of the choice-of-law clause in the arbitration provision.

*Arbitration Agreement in Regard to SV-USA*

DGI argues that even if the arbitration provision is enforceable, claims against SV-USA are not subject to the provision because SV-USA is not a signatory to the agreement. DGI argues further that "the mere parent-subsidiary relationship does not create the relation of principal and agent or alter-ego between two corporations, for the purpose of binding a non-signatory corporation to an arbitration agreement."

7

A party cannot typically be required to submit to arbitration under an arbitration agreement to which it is not a signatory. *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005) (*Zurich*). There are, however, five exceptions under which a non-signatory can be bound by an arbitration agreement: (1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference. *Zurich*, 417 F.3d at 687.

Defendants advance an estoppel theory to show DGI is required to arbitrate any claims against SV-USA. Defendants argue that DGI is required to arbitrate its claims against SV-USA because it is seeking to claim a benefit under the agreement that contains the arbitration provision. In *Zurich*, the Court held that "[a] non-signatory is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." *Zurich*, 417 F.3d at 688. That same general principle applies in this case. While DGI is a signatory seeking to avoid arbitration with SV-USA, a non-signatory, it cannot do so while also seeking to enforce its rights pursuant to the agreement against SV-USA. DGI argues that its claims against SV-USA are not based on the terms of its agreement with SV. Both the tortious interference and declaratory judgment claims, however, are based on DGI's alleged rights (pursuant to the agreement) to the exclusive purchase and sale of SV products. Furthermore, allowing DGI to proceed against SV-USA, while ordering arbitration between DGI and SV with regard to the same agreement, could result in inconsistent judgments.

Therefore, because DGI seeks to claim benefits under its agreement with SV and to enforce those benefits against SV-USA, DGI is estopped from avoiding arbitration with SV-USA.

*Prohibitive Costs of Arbitration*

DGI argues that the arbitration agreement is unenforceable because it is "prohibitively expensive." The prohibitive nature of arbitration costs is a legitimate reason to deny arbitration, though the party seeking to invalidate an arbitration agreement bears the burden of showing the likelihood of incurring prohibitive costs *and that it is financially incapable of meeting those costs*. *Livingston v. Assocs. Fin. Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (*Livingston*), quoting *Greentree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000) (*Greentree*) (emphasis added). That party must provide "individualized evidence" of prohibitive costs and its inability to bear them. *Livingston*, 339 F.3d at 557. Once the party opposing arbitration has met its burden, the party seeking to compel arbitration must provide contrary evidence. *Livingston*, 339 F.3d at 557. Such a determination is to be made on a case-by-case basis. *Phillips v. Assocs. Home Equity Servs., Inc.*, 179 F. Supp. 2d 840, 848 (N.D. Ill. 2001). The cases relied upon by DGI to show situations in which arbitration costs were found to be prohibitive are not instructive in this situation. Each of the four cases cited by DGI involved consumers opposing sophisticated businesses that were seeking to compel arbitration based on non-negotiated arbitration provisions. *See Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772 (N.D. Ill. 2002) (individual restaurant customer successfully opposes corporate restaurant's attempt to compel arbitration based on provision in restaurant game rules); *Phillips v. Associates Home Equity Services, Inc.*, 179 F. Supp. 2d 840 (N.D. Ill. 2001) (borrower successfully opposes mortgage lender's attempt to compel arbitration based on written arbitration agreement); *Arnold v. Goldstar Financial Systems, Inc.*, 2002 WL 1941546 (N.D. Ill. Aug. 22, 2002) (customers successfully oppose credit repair services' attempt to compel arbitration based on written arbitration agreement); *Plattner v. Edge Solutions, Inc.*, 2004 WL 1575557 (N.D. Ill. April 1, 2004) (individual customer successfully

opposes debt consolidation company's attempt to compel arbitration based on written arbitration agreement). Unlike the plaintiffs in the cases cited by DGI, DGI and SV are each sophisticated business entities experienced in international commercial agreements. Furthermore, DGI and SV did negotiate the arbitration provision in the agreement in question, as evidenced by the subsequent amendments to that provision.

While DGI does set forth the potential costs of arbitration (including fees, costs of document production and translation, and travel costs), it does not set out its financial situation beyond a statement that it operated at a loss in 2006, with a total business income of -$13,808. Defendants argue that DGI is a multi-million-dollar corporation with close to $7,000,000 in annual sales, a good credit rating, and a low probability of financial crisis. Defendants also note that DGI may not bear any fees at all if it prevails in arbitration. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss or Stay, Ex. 1, Schedule on Arbitration Fees & Costs, § 6.

Based on the above, DGI has failed to show that it will incur prohibitive costs and that it is financially incapable of bearing those costs. Pursuant to the Supreme Court's announced policy of resolving any doubts in favor of arbitration, DGI is required to honor the arbitration provision within its agreement with SV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or to Stay the Action in Its Entirety in Favor of Arbitration is granted. The matter is stayed, pending arbitration.

Dated: 2-13-08

JOHN W. DARRAH
United States District Court Judge

10